IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ERIC HEIN,

       Plaintiff,

v.

KEMUEL A. KIMBROUGH, Sr.,
V.T. ROBINSON-WILLIAMS,
J. SPAIN, TERRY EVANS,
and JOHN DOE,

       Defendants.

CIVIL ACTION FILE

NO. 1:09-cv-1791-JEC

## ORDER AND OPINION

The above civil action is before the Court on defendants' renewed motion for summary judgment, entitled Defendants' Motion for Summary Judgment On Plaintiff's First Amendment Claim [112]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendants' Motion for Summary Judgment [112] is **GRANTED**.

## BACKGROUND

### I.  FIRST ORDER AFTER INITIAL ROUND OF SUMMARY JUDGMENT BRIEFING

Plaintiff Eric Hein was terminated from his position as a Clayton County Sheriff's Deputy and brought this federal civil rights claim pursuant to 28 U.S.C. § 1983. Plaintiff alleged that defendants terminated him in retaliation for his exercise of First

Amendment rights.   Specifically, plaintiff contended that he was fired because of his perceived association with the previous sheriff, Victor Hill, a very controversial figure whose tenure generated much litigation and who was defeated for reelection by defendant Kimbrough.   Defendants disagreed that this was their motivation, instead responding that plaintiff was fired for misconduct spanning both the Hill and Kimbrough administrations.   Plaintiff also alleged that the process by which he was discharged violated his due process rights, as well as other miscellaneous Constitutional rights.

Defendants previously filed a Motion for Summary Judgment [87] as to all claims.   (Defs.' Mot. for Summ. J. ("DMSJ" [87].)   This Court issued a detailed Order in which it granted defendants' motion for summary judgment on the due process and other claims that were directed at the process that was used to terminate plaintiff.   (Order of March 28, 2011 ("Order") [111] at 32-48.)

As to plaintiff's First Amendment retaliation claim, defendants had argued that, under existing Eleventh Circuit precedent, a sheriff is entitled to fire a deputy based on patronage considerations and, accordingly, the plaintiff's First Amendment claim was barred.   (DMSJ [87] at 16-18).   As a corollary to this argument, defendants argued that even if the First Amendment precluded them from firing plaintiff based on a perception of his loyalty to and support of the defendant sheriff's predecessor, the law was not clearly established on that

2

point at the time of the dismissal, and hence defendants were entitled to qualified immunity. (*Id.* at 13-15.)

Finally, should the above two arguments fail, defendants contended that plaintiff could not prove a retaliatory motivation for the firing because plaintiff could not prove that defendants were aware that plaintiff had been a supporter of the previous sheriff. Even had they been, defendants argue, the evidence showed that plaintiff was fired because of his misconduct. (*Id.* at 18-20.)

As to the last argument, the Court concluded that, given the abbreviated and conclusory nature of defendants' advocacy on this point, as well as the sharply different inferences that the parties had drawn from the undisputed evidence, there were disputed issues of material fact concerning whether defendants had fired plaintiff because they thought he had supported Victor Hill.  The Court therefore denied summary judgment for defendants on their argument that the Court, could find, as a matter of law, that plaintiff had been fired for misconduct.  (Order [111] at 31, n.12.)

As to defendants' argument that the First Amendment did not prohibit them from firing plaintiff based on his perceived political disloyalty,[1] the Court indicated that the parties' briefing on this

---

[1]  It should be noted that defendants vehemently deny that they were even aware of plaintiff's rather insignificant support of Victor Hill and argue that this support could therefore not be the basis for the dismissal.  Their contention that they had the power to fire

point had been too superficial to enable the Court to make a ruling. It therefore denied without prejudice defendants' motion for summary judgment on the First Amendment claim, and directed that the parties submit supplemental briefing. (Order [111] at 14-16.) To guide the parties in their rebriefing, the Court expended a great deal of its own time researching and analyzing the uncertain questions arising from defendants' contention, and it directed the parties to respond to these specified questions. (*Id.* at 12-32.)

## II. **DEFENDANTS' PENDING RENEWED MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S FIRST AMENDMENT CLAIM**

Defendants' present renewed motion for summary judgment [112] was filed after the Court ordered the parties to submit additional briefing on plaintiff's sole remaining claim.[2] In this present motion, defendants expand on their earlier contention that the First Amendment did not preclude the defendants from firing plaintiff based on his perceived support for the previous sheriff and, even if it did, defendants are protected by qualified immunity. Defendants also take another stab at an argument on the merits: that is, they contend that plaintiff has failed to demonstrate that defendants either

---

plaintiff based on patronage considerations is therefore not an admission that this bore any role in the termination decision.

[2]  As pointed out by defendants, plaintiff's Response to defendants' Renewed Motion for Summary Judgment [112] was untimely. Nevertheless, in the interest of justice, the Court has considered that response.

perceived that he was loyal to the prior sheriff or that any such perception was a motivating factor in their decision to fire him. Finally, defendants respond to the Court's observation in its first Order that plaintiff had failed to explain how the individual defendants who had no power to fire him could be held responsible for that termination. (*See* Order [111] at 13.)

## DISCUSSION

### I. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO THEIR MOTIVATION FOR FIRING PLAINTIFF

Defendants again contend that plaintiff has not produced any evidence that his perceived political affiliation was the reason for his termination. The Court will refer to this argument as a motion for summary judgment on the merits.

In order to demonstrate a violation of his First Amendment rights, a plaintiff bears the initial burden of showing that his political affiliation was a "substantial" or "motivating" factor behind his dismissal. *McCabe v. Sharrett*, 12 F.3d 1558, 1565 n.8 (11th Cir. 1994)(noting that *Mt. Healthy* standard applies to political affiliation claims). Defendants may then rebut this claim by showing that plaintiff would have been terminated regardless of his political affiliation. *Id.* If this burden has been met, plaintiff then has the opportunity to demonstrate that the alleged reasons for dismissal were merely pretextual.

The Court previously denied summary judgment because disputed issues of material fact exist as to whether plaintiff's termination decision was pretextual. (See Order [111] at 31 n.12.) Defendant Kimbrough has presented no grounds for reconsideration of this ruling. *See Bryan v. Murphy*, 246 F. Supp. 2d 1256, 1258-59 (N.D. Ga. 2003)(Martin, J.)("Reconsideration is only 'absolutely necessary' where there is: (1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact.")(citations omitted).

Summary judgment is therefore **DENIED** on the merits as to defendant Kimbrough, as defendant Kimbrough had the authority to terminate plaintiff, as he instructed Chief Watkins to do so, if he deemed such action merited, and as plaintiff has offered evidence that Kimbrough's motivation to fire him could have been based on plaintiff's support of Kimbrough's political rival.[3] (*See* Defs.' Mot.

---

[3]   Defendant Kimbrough has not argued that he was the wrong defendant to sue in that it was Chief Watkins, not Sheriff Kimbrough, who made the decision to fire the plaintiff, following a hearing over which Watkins presided. Chief Watkins was not named as a defendant in this case.

Likewise, defendant Kimbrough has not argued that responsibility for plaintiff's termination under § 1983 cannot be attributed to him because he was not the official with final decision-making authority over terminations. *See Maschmeier v. Scott*, 269 Fed. App'x 941, 943 (11th Cir. 2008)(municipal official who fires an employee is not a final policymaker for § 1983 purposes, where that decision is subject to meaningful administrative review, as the board reviewing the termination decision has the power to overturn it); *Quinn v. Monroe*

6

for Summ J. Br. ("Defs.' Br.) [112-1] at 4.)

As to the other defendants, the Court previously noted, in denying summary judgment on the merits, that plaintiff had failed to explain how these other defendants, who had no power to terminate him, could be held responsible for constitutional violations arising out of that termination. (Order [111] at 13.) Nevertheless, as the defendants' summary judgment motion had not focused on these defendants, individually, the Court did not address the liability of each defendant.

Individual defendants Robinson-Williams, Spain, and Evans have now addressed the above question in this second round of briefing. It is undisputed that Kimbrough's co-defendants lacked the power to terminate plaintiff. Without supervisory authority over plaintiff, they cannot be held liable for his termination. *Cf. Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1523 (11th Cir. 1995)(co-employees without supervisory authority over plaintiff not liable under § 1983 because they did not use state authority to create a hostile work

---

*Cnty.*, 330 F.3d 1320, 1326 (11th Cir. 2003)(the same).

As the Clayton County Civil Service Board would presumably have been empowered to reverse the termination decision, had plaintiff appealed that decision to the them, the Court suspects that the above argument would have been a winning argument for defendant, and would have saved the Court and parties the time expended on the more esoteric First Amendment issue. As it was not made, however, the Court proceeds with the First Amendment analysis, set out below.

7

environment); *Miller v. Univ. of S. Ala.*, Civil Action No. 09-0146-KD-B, 2010 WL 1994910 (S.D. Ala. May 17, 2010)(DuBose, J.)(defendants with no authority to prevent reappointment of plaintiff or to otherwise alter conditions of work are not liable under § 1983).

Finally, even if defendants Robinson-Williams, Spain, and Evens could be held liable for terminating plaintiff, despite not having such authority, plaintiff has failed to demonstrate the existence of a genuine issue of material fact that these defendants conspired to violate plaintiff's rights.[4] To prove a 42 U.S.C. § 1983 conspiracy, a plaintiff "must show that the parties 'reach[] an understanding' to deny the plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy." *Bailey v. Bd. of Cnty. Comm'rs*, 956 F.2d 1112, 1122 (11th Cir. 1992)(citing *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990)). Plaintiff need not produce a "smoking gun" to establish the "understanding" or "willful participation" required to show a conspiracy, but must show some evidence of

---

[4] Plaintiff failed to respond to defendants' contentions that the conspiracy claim should be deemed waived as untimely, and that, even if considered, it should be barred by the intracorporate conspiracy doctrine. As to the latter, the Court finds defendants' intracorporate conspiracy argument to be inapt here. It is true, however, that plaintiff does not plead separately a claim for a conspiracy to violate § 1983, nor is the latter clearly articulated in his briefing. At any rate, as explained in text, the Court concludes that plaintiff has failed to offer evidence sufficient to find the other defendants liable for his dismissal under a conspiracy theory.

AO 72A
(Rev.8/82)

agreement between the defendants. *Rowe v. City of Ft. Lauderdale*, 279 F.3d 1271, 1283-84 (11th Cir. 2002). Circumstantial evidence may be sufficient if it proves the existence of the conspiracy. *Burrell v. Bd. of Trs. of Ga. Military Coll.*, 970 F.2d 785, 789 (11th Cir. 1992). However, merely "string[ing] together" adverse acts of individuals is insufficient to demonstrate the existence of a conspiracy. *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992).

Plaintiff has produced no direct evidence demonstrating that Kimbrough and his co-defendants reached an agreement to terminate him. Circumstantial evidence that a general dislike for Hill supporters pervaded the Sheriff's Office is insufficient to defeat a motion for summary judgment. *Burrell*, 970 F.2d at 792 ("Even well-founded allegations of widespread disapproval" of the plaintiffs' statements regarding its employer "do not permit us to infer the conspiratorial acts that would allow [plaintiff's] section 1983 claim").[5] In short, the Court concludes that plaintiff has failed to offer evidence that would permit an inference that defendants Robinson-Williams, Spain, and Evans conspired to retaliate against

---

[5] It should also be noted that, in contrast to plaintiff, whose support for Hill was rather paltry and not broadcast by him publicly, defendant Robinson-Williams was, herself, an open Hill supporter who campaigned on his behalf. (Robinson-Williams Dep. [87] at ¶¶ 7-8.) This active prior allegiance by Robinson-Williams undermines any claim that she would have been motivated to retaliate against someone who might have shown similar leanings.

AO 72A
(Rev.8/82)

him based on plaintiff's perceived prior support for the defeated sheriff, Victor Hill.   Therefore, these defendants' Motion for Summary Judgment on the merits is **GRANTED**.

II.  **WHETHER A DECISION BY SHERIFF KIMBROUGH TO TERMINATE PLAINTIFF BASED ON HIS PERCEIVED SUPPORT FOR THE PRIOR SHERIFF WOULD HAVE VIOLATED PLAINTIFF'S FIRST AMENDMENT RIGHTS**

As to this First Amendment claim, the two pivotal questions remain: (1) would a termination of plaintiff based on his perceived support for the defeated sheriff run afoul of the First Amendment and (2) even if it did, was the law clearly enough established to have put defendant Kimbrough on notice that the First Amendment forbade such action?  As to the first question, a summary of the analysis found in this Court's first Order provides background for the present renewed motion.

**(1)  This Court's Prior Order**

In that Order, the Court noted that, as defendants had argued, plaintiff's First Amendment activity should be analyzed under the "political affiliation/patronage" line of authority, otherwise known as the *Elrod-Branti* test, not the political speech line of authority, otherwise known as the *Pickering* balancing test.  (Order [111] at 16-18).  In attempting to apply this first line of authority, however, the undersigned noted how confusing this Supreme Court authority is.

10

Specifically, the Order noted, *Elrod*[6] has come to stand for the proposition that a government employee who neither makes policy nor occupies a confidential position cannot be discharged based on patronage considerations. *Branti*,[7] however, seemed to pull back from the above test, and instead focused on whether political affiliation is an appropriate requirement for the particular public office at issue. (Order [111] at 18-19.)

Fortunately, given the confusing state of Supreme Court law, the defendants had cited clearer Eleventh Circuit precedent, which caselaw had recognized a sheriff's *carte blanche* authority to fire a deputy based on patronage considerations, unimpeded by the First Amendment. (*Id.* at 19-20.) That case authority, however, did not necessarily carry the day for defendants, as the two cited cases-- *Terry* and *Cutcliffe*[8]--turned on an interpretation of the close, *alter ego*, relationship between a sheriff and his deputies under Alabama and Florida[9] law, respectively. There had been no Eleventh Circuit case that evaluated Georgia law on that score. (*Id.* at 19-21.)

---

[6] *Elrod v. Burns*, 427 U.S. 347 (1976).

[7] *Branti v. Finkel*, 445 U.S. 507 (1980).

[8] *Terry v. Cook*, 866 F.2d 373, 375 (11th Cir. 1989) and *Cutcliffe v. Cochran*, 117 F.3d 1353, 1355 (11th Cir. 1997).

[9] The Eleventh Circuit affirmed the reasoning set out in *Cutcliffe* in another Florida sheriff's deputy case: *Silva v. Bieluch*, 351 F.3d 1045, 1046-1047 (11th Cir. 2003).

11

Nevertheless, the Court undertook its own analysis of Georgia law in an effort to discern whether one could likewise attribute the same close relationship to Georgia sheriffs and their deputies that the Eleventh Circuit had inferred from an examination of Alabama and Florida law. (Order [111] at 21-23.) The Court concluded that Georgia law created the same close relationship between a sheriff and his deputies that the Eleventh Circuit had found sufficient to permit a sheriff to fire a deputy based on patronage considerations. There was a potential wrinkle not addressed by the parties, however: specifically, Clayton County had adopted a civil service system that expressly forbade terminating an employee except for cause. (*Id.* at 23.)

In considering whether the existence of such a system should change the analysis, the Court pointed out to counsel the case of *Hill v. Watkins,* 280 Ga. 278 (2006), in which the Georgia Supreme Court had examined the Clayton County Civil Service System and had concluded that it did, in fact, apply to the dismissal of 27 Sheriff's office employees by the newly-elected Sheriff Victor Hill. (Order at [111] 23-24.) Nevertheless, in so ruling, the Georgia Supreme Court did not opine as to whether a dismissal in violation of the civil service system would implicate First Amendment rights. Further, as the Order noted, the precedent established by *Hill* is uncertain, however, because, in text, the Supreme Court held that

12

Clayton County could not fire deputies or other staff members without complying with the civil service plan, but, then in a footnote, the court stated: "Our holding today is in no way intended to diminish the autonomy granted to the sheriff to appoint or discharge employees...or to maintain the independence of his elected position." (Order [111] at 30, citing *Hill*, 280 Ga. at 281 n.3.)

Given this confusion, the Court directed the parties to brief: (1) the significance of a merit system in Clayton County to the question whether a sheriff's termination of a deputy whom he perceived to be potentially disloyal violated the First Amendment and (2) whether a sheriff could violate a merit system by such a termination, but not violate the First Amendment. (*Id.* at 26-27.)

**(2)  Supplemental Briefing By The Parties**

In its renewed briefing on this question, defendant reiterated that it had complied with the Clayton County Civil Service Act in dismissing the plaintiff, because there was good cause for the termination, as required by the Act: specifically, plaintiff's neglect of duty, conduct unbecoming, negligence in performing duties, misconduct, and failure to obey a rule.[10]  (Defs.' Br. [112-1] at 6-

---

[10]  Defendant cites the grounds provided in the Civil Service Act for a dismissal for cause, one of which is "political activity in violation of these Rules and Regulations." (*Id.* at 6.) Defendant does not explain what political activity was prohibited by the Act and did not cite such activity as one of its grounds for firing the plaintiff.  Accordingly, the Court assumes that the limited support

13

7.)

As to the impact on plaintiff's First Amendment claim of a civil service requirement that an employee be dismissed only for cause, defendant reiterates the line of Eleventh Circuit authority holding that, given the close relationship between a sheriff and his deputy, a sheriff can fire a deputy based on the latter's support of a political opponent of the sheriff.  Defendant specifically notes that, notwithstanding its awareness that in 1995 Florida had enacted civil service protection for deputy sheriffs who had engaged in political activity,[11] the Eleventh Circuit nevertheless reaffirmed the principal that, at least as far as the First Amendment is concerned, a Florida sheriff may hire and fire deputies based on the latter's political patronage, due to the need for personal loyalty by a deputy to his sheriff.  *Silva v. Bieluch*, 351 F.3d 1045, 1047 (11th Cir. 2003).

Finally, defendant asserted that even if the termination here violated the civil service rules, that violation did not give rise to a First Amendment claim by the plaintiff.  Indeed, defendant notes that, undermining plaintiff's now belated claim that his dismissal

---

that plaintiff gave to Victor Hill in the latter's unsuccessful bid for reelection did not run afoul of the Act's prohibitions on political activity.

[11] *See Cutcliffe v. Cochran*, 117 F.3d 1353, 1361 (11th Cir. 1997).

14

contravened the county's civil service act is that fact that the plaintiff never even filed an appeal of his dismissal to the Civil Service board.  (Defs.' Br. [112-1] at 21.)

In his response to defendant's second motion for summary judgment, plaintiff does not provide any analysis of the impact of a civil service rule on the First Amendment issue here.

### (3)  Eleventh Circuit's Recent Decision in *Underwood v. Harkins*

The Eleventh Circuit has recently issued a decision that has brought some welcome clarity to the question concerning the circumstances under which an elected state official can fire a political adversary, or a supporter of an adversary, without running afoul of the First Amendment rights of the employee.  In *Underwood v. Harkins*, 698 F.3d 1335 (11th Cir. 2012), two deputy clerks ran for the position of clerk of the superior court, after the incumbent had decided to retire.  Upon being sworn in, the winning deputy fired her former political rival.  The latter then sued, arguing that this dismissal violated the First Amendment, as it was obviously based on the plaintiff's decision to oppose the new clerk in an election.

In addressing this question, the panel first noted the "muddled" state of First Amendment jurisprudence concerning firings based on political affiliation or candidacy.  *Underwood*, 698 F.3d at 1338. After exhaustively dissecting the relevant Supreme Court and Eleventh Circuit precedent, the panel identified two principles that seemed

15

clear: (1) candidacy dismissals (as in *Underwood*) are to be treated like candidate support dismissals (as in this case) and (2) an individual's First Amendment interest in candidacy (or in supporting a candidate) "has to be balanced against the interests of the state" in the "confidentiality and loyalty" of employees. *Id.* at 1340.

In deciding how that balancing test should be applied in the case before it involving a Georgia county clerk of court, the panel relied heavily on its precedent concerning the right of a sheriff to dismiss a deputy, based on political grounds. Thus, the panel noted that *Terry v. Cook*, 866 F.2d 373 (11th Cir. 1989), noted the "closeness and cooperation" between a sheriff and his deputies that "necessitate[d] the sheriff's absolute authority over their appointment and retention." *Underwood*, 698 F.3d at 1341 (internal citation omitted). The panel noted that, in reaching this conclusion, the *Terry* court drew heavily on the duties of a deputy set out by Alabama statute.

Likewise, the panel relied on *Stegmaier v. Trammell*, 597 F.2d 1027 (5th Cir. 1979), in which the former Fifth Circuit, examining the relationship between a court clerk and deputy clerk, as specified by statute, concluded that the latter established a "confidential relationship" between the two individuals. Given that "confidential relationship," the former Fifth Circuit also concluded that it was necessary that the clerk "be able to select a deputy in whom he has

16

total trust and confidence and from whom he can expect, without question, undivided loyalty." *Underwood*, 698 F.3d at 1342 (internal citation omitted).

The court in *Underwood* made clear that, in determining whether a "confidential" relationship existed as a matter of law, one must take a "categorical approach," that looks, not to the duties that might actually be assigned to the subordinate, but to the duties that the law has conferred on this person. "What matters in a case like this one is not what the subordinate actually does on a day-to-day basis, but rather what the subordinate is legally empowered to do under state or local law." *Id*. at 1344.

The panel left open the possibility that a subordinate could occupy a "confidential" relationship even where that relationship was not clearly set out in the statutes conferring authority on the subordinate. In the latter situation, however, a factual exploration of the actual duties of the subordinate--and thereby the actual need to demand loyalty--is necessary. To find, as a matter of law, that a subordinate occupies a confidential relationship, however, a court must determine that the subordinate is effectively the "legal alter ego of the official." *Id*. at 1345.

From all of the above analysis, the panel determined that, as the Georgia legislature had given the deputy clerk the same powers as the clerk, the clerk could fire the deputy, even if that dismissal

17

was motivated by the deputy's decision to compete with the clerk in the election for that position.  *Id.*

**(4)  Application of *Underwood* Here and Impact of County Civil Service Act Protections**

As set out in this Court's original Order, the powers conferred on a deputy sheriff under Georgia law are comparable to those powers conferred by Alabama and Florida law, which powers were sufficient to prompt a determination by the Eleventh Circuit that sheriffs in those states could fire their deputies based on a perception that the deputies were not sufficiently loyal, politically, to the sheriff. (*See* Order [111] at 21-23.)   Thus, *Underwood* supports the undersigned's preliminary conclusion, in its initial Order, that Eleventh Circuit precedent compels a conclusion that a Georgia sheriff may fire a deputy based on a perception that the latter is insufficiently loyal to the sheriff, even when the evidence of that disloyalty arises from the deputy's exercise of a First Amendment right to support the sheriff's political opponent.

The potential wrinkle identified in the first Order--the existence of a county civil service ordinance that permits a dismissal, even of deputy sheriffs, only for cause--was not addressed by *Underwood*.   Indeed, the decision in that case indicated that in the county at issue--Lumpkin County--a superior court deputy clerk is an at-will employee who is not protected by the civil service system.

18

*Underwood*, 698 F.3d at 1337.  There was no indication by the court, however, that this fact made any difference in its analysis.

Further, other than the defendant's citation of the *Silva* decision, the parties have not provided the Court with any legal authority on this point.  *Silva* is not unimportant though.  Prior to the issuance of *Silva*, the Eleventh Circuit had issued *Cutcliffe v. Cochran*, 117 F.3d 1353 (11th Cir. 1997), in which the author of the main opinion had unenthusiastically upheld the right of the Florida sheriff to fire his deputy on political patronage grounds, so ruling only because she concluded that the court's precedent in the *Terry* Alabama sheriff case required this result.  *Id.* at 1357 (*Terry* opinion constituted a "broad holding that sheriffs have the authority to fire their deputies for political affiliation reasons") and at 1358 (plaintiff's claim that selective firings based on partisan considerations is "precluded by *Terry*," which "only the en banc court can reverse.").

A concurring opinion in the *Cutcliffe* decision disagreed with the above suggestion that *Terry* might have been wrongly decided.  *Id.* at 1360.  At any rate, this concurring opinion noted that these types of dismissals would not recur in the future, given the fact that, in 1995, the state of Florida enacted a statute that specifically gave protection to deputy sheriffs against such types of dismissal based on "lawful off-duty political activity."  *Id.* at 1360-61.

19

That prophecy was inaccurate, however, as *Silva v. Bieluch*, 351 F.3d 1045 (11th Cir. 2003), issued six years later, involved the dismissal of a Florida deputy sheriff based on alleged political patronage concerns. There, once again, Florida deputy sheriffs were treated adversely (demoted, in this case) by the newly-elected sheriff, whose opponent the deputies had supported. *Id*. at 1046. The existence of a civil service plan (not mentioned by the panel) did not prevent the panel from stating:

> We already have concluded that personal loyalty to the sheriff is an appropriate requirement for the effective performance of a deputy sheriff. *See Terry v. Cook*, 866 F.2d 373, 377 (11th Cir. 1989). And if a sheriff may hire and fire deputy sheriffs based on the employees' political patronage, *see Cutcliffe*, 117 F.3d at 1357-58, we conclude a sheriff may promote and demote on this basis also.

*Id*. at 1047. Therefore, the court concluded that the plaintiff deputy sheriffs had failed to state a claim under the First Amendment. *Id*.

In short, there is no Eleventh Circuit law indicating that the existence of local civil service protection undermines the precedent set in *Terry.* Further, in *Silva*, the Eleventh Circuit upheld the principle articulated in *Terry*, even though Florida's civil service system protected deputy sheriffs engaged in lawful political activity, albeit that issue was not addressed by the panel. In short, like *Cutcliffe*, this Court concludes that *Terry,* as well as *Cutcliffe* and *Silva*, constitute binding authority.

20

Moreover, the Court does not consider the case that prompted the rebriefing in this case--*Hill v. Watkins*, 280 Ga. 278 (2006)--to require a different result.  As noted in this Court's first order, *Watkins* arose out of the decision of Clayton County Sheriff Victor Hill to summarily fire 27 employees of the Clayton County Sheriff's Office (some of whom were presumably deputy sheriffs).  These employees sued, complaining that their dismissal violated the Clayton County Civil Service Act of 1994.  The case made its way to the Georgia Supreme Court, where Sheriff Hill argued that Clayton County had not correcting followed the appropriate Georgia enabling statutes when the county created a civil service system and that, accordingly, these 27 employees were not covered by the Act.  *Id.* at 278, 281.

Although the Georgia Supreme Court concluded that these employees were protected by the Act, that court nowhere focused on deputy sheriffs, in particular, or the interaction between a civil service system and the First Amendment, in general.  Instead, the court's analysis was limited to deciding whether the county had properly included the members of the sheriff's office in its newly-promulgated civil service system in 1994.  Dissecting the very complicated and confusing Georgia law concerning how a county may properly adopt such a system for its employees, the court concluded that, the constitutional and statutory prerequisites having been met, the law only required that 50% of the employees of the Clayton County

21

Sheriff's Office had to vote to be included in such a system. Because a majority so voted, all the members of that office were covered. *Id.* at 281.

As noted, although the Georgia Supreme Court found the plan to apply to the employees of the sheriff's office, the court nonetheless cautioned that it did not intend "to diminish the autonomy granted to the sheriff to appoint or discharge employees...or to maintain the independence of his elected position." *Id.* at 281 n.3 (internal citations omitted). Also as noted earlier, the court had no occasion to opine on the impact of this local county civil service system on a federal First Amendment claim challenging the sheriff's right to fire employees perceived to be politically disloyal.

In trying to anticipate whether the Eleventh Circuit might alter its *Terry* precedent based on the existence of civil service protections for a deputy sheriff, the Court notes that *Terry* and its progeny look to how state law defines the relationship between an elected official and his subordinates to determine whether the latter is an alter ego for the official, such that the former has *carte blanche* to fire the subordinate for political opposition that would otherwise be protected by the First Amendment. The key focus here would seem to be "state law." For sure, a civil service system for a particular county or particular county governmental agency can only be established in compliance with state law and procedures. Yet, it

22

is not state law in the sense that the State has made a global decision that a particular job category, such as deputy sheriff, will be protected from dismissal across the state.  Instead, these systems are created only when the particular county seeks them.

While the undersigned has not endeavored to become an expert in this area of Georgia law, the limited research done has made clear that civil service systems in the state are a hodgepodge of regulations that are largely determined by the County's wishes, not by a state general directive.  So, for example, a court clerk's office in Lumpkin County (*Underwood*) is not covered, nor was a clerk's office in Gwinnett County.  *Gwinnett Cnty. v. Yates,* 265 Ga. 504 (1995).

Further, that a county has adopted a civil service system does not mean that an employee will necessarily be able to engage in political activity, as the county apparently determines the parameters of its plan.  As noted, at the time of the firings in this case, the Clayton County plan indicated that an employee could be fired for political activities in violation of the plan.  Apparently, plaintiff's activities did not contravene that provision, whatever its particulars may have been.[12]  Yet, the fact that it existed means

---

[12]  Having taken the laboring oar in handling the research duties in this case, the Court has not expended more than minimal efforts in unsuccessfully trying to learn what political activities were prohibited by the Civil Service Act in effect at the time of

that it is possible that Clayton County could just as easily have proscribed campaigning in an election or contributing to the campaign of any candidate, at least for a deputy sheriff, given the latter's confidential relationship with a sheriff.

A rule that would tether the scope of the First Amendment to the particular variables of a given county's civil service plan would create bizarre consequences that bear little relation to the underpinnings of that Amendment or to the exceptions that have been found to be acceptable in the case of public employment.  It would mean that, in Georgia, deputy sheriffs in some counties might have a First Amendment right against dismissal based on political patronage, while deputies in other counties would not.  The difference would arise only because of the particular civil service plan in effect in the county that employed the deputy.  Moreover, a deputy sheriff subject to a county civil service system that permits political activity can obtain relief simply by challenging his dismissal pursuant to that plan.[13]

---

plaintiff's dismissal.  It has found, however, that this provision--whatever its terms--was eliminated by the Clayton County Commission in 2012.  *See* Clayton County Ordinance No. 2012-71 (April 10, 2012).

[13]  As noted *supra,* defendant states that plaintiff never even made the effort to appeal his dismissal, as he was entitled to do under the County's civil service rules.

AO 72A
(Rev.8/82)

In short, there are strong reasons to conclude that *Terry* and
its progeny dictate the result in this case: meaning that the sheriff
here did not violate the First Amendment rights of plaintiff even if
he fired plaintiff because he believed the plaintiff to be a
supporter of the sheriff's political rival.[14]

---

[14]   The Court notes the existence of authority outside this
circuit holding that the existence of a civil service system is a
factor in determining the question at issue in this case. *See, e.g,
Bavaro v. Pataki*, 130 F.3d 46, 50 (2d Cir. 1997)(no presumption that
positions defined as "exempt" from civil service protection are
necessarily exempt from First Amendment protection, but interests of
federalism counsel substantial deference to state's judgment about
definition of job position); *Waskovich v. Morgano*, 2 F.3d 1292, 1299
n.7 (3d Cir. 1993)(position's exemption from civil protection is "one
of the factors to be considered in determining whether a dismissal on
political grounds offends the First Amendment"); *Fields v. Prater*,
566 F.3d at 388 (4th Cir. 2009)("whether state law prohibits
politically-based hiring for a particular position is relevant to
whether political affiliation is 'necessary for effective job
performance'"); *Stott v. Haworth*, 916 F.2d 134, 142 (4th Cir.
1990)(exemption from civil service system creates presumption that
patronage dismissals are proper); *Back v. Hall*, 537 F.3d 552, 556-57
(6th Cir. 2008) (inclusion in civil service system warrants deference
to state legislature's decision to make position nonpolitical); *Hall
v. Tollett*, 128 F.3d 418, 423 (6th Cir. 1997)("state legislatures
have the ability to remove government positions from the political
sphere by including them in a civil service system and...the
legislature's decision as to whether a particular job should be
classified as political or nonpolitical is at least entitled...to
'some deference.'"); *Fuerst v. Clarke*, 454 F.3d 770, 773-74 (7th Cir.
2006)(inclusion in civil service system that gives protection to some
level of party affiliation "amend[s] the job description" and
confirms that political loyalty is not a valid qualification); and
*Finkelstein v. Bergna*, 924 F.2d 1449, 1453 (9th Cir. 1991)(noting
that a person with civil service status might be in a different and
more protected position than a political appointee). *But see
Hadfield v. McDonough*, 407 F.3d 11, 18 n.5 (1st Cir. 2005)("state law
classification of a position is not determinative in the
*Branti* analysis").

25

Yet, whether or not the Sheriff violated plaintiff's First Amendment rights in firing him, the Sheriff can still escape liability if qualified immunity applies here.  The Supreme Court in *Pearson v. Callahan,* 555 U.S. 223, 232 (2009) reiterated that where qualified immunity is pled by a government official, the court must decide (1) whether the facts make out a violation of a constitutional right and, if they do, (2) whether the right at issue was clearly established at the time of the alleged misconduct.  Abandoning its prior precedent, which required that the first question had to be answered before proceeding to the second, the Court held that a district court may exercise its sound discretion in deciding which of the two prongs should be addressed first in light of the circumstances in the particular case at hand.  *Id.* at 236.  The Court further noted that it may be appropriate to decide the second question first when "it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right."  *Id.* at 237.

As set out above, it is far from obvious that plaintiff has established the violation of a constitutional right in this case.  As set out below, it is plain that, even were there such a right, it was not clearly established.

26

### III. **DEFENDANT KIMBROUGH ENJOYS QUALIFIED IMMUNITY ON PLAINTIFF'S FIRST AMENDMENT CLAIM**

The pivotal question in determining qualified immunity here is whether the law advocated by the plaintiff was clearly established at the time of the alleged misconduct.  It is the plaintiff's burden to establish both the existence of a constitutional violation and that the law was clearly established at the time of the violation. *Youmans v. Gagnon*, 626 F.3d 557, 562 (11th Cir. 2010).  A law may be clearly established in this circuit only by decisions of the United States Supreme Court, the Eleventh Circuit, or the state supreme court.  *Id.* at 565.

Plaintiff has failed to meet this second prong of the test, and indeed has made little effort to do so.  As discussed above, there are no Supreme Court or Eleventh Circuit holdings that indicate that Sheriff Kimbrough's dismissal of plaintiff violated the latter's First Amendment rights.  While this Court, and not the plaintiff, did identify in its first Order a Georgia Supreme Court case that concluded that the Clayton County Civil Service Act applied to employees of the Sheriff's Office there, that opinion did not establish that dismissal of a deputy sheriff based on the latter's support of a political rival, and in violation of the provisions of that Act, would violate the First Amendment.  *See Autery v. Davis,* 355 Fed. App'x 253, 256 (11th Cir. 2009)(Alabama sheriff was entitled

to qualified immunity when he fired two deputies, based in part on patronage considerations; *Terry* decision authorized such dismissal, and "even if [its] rationale...is somehow weakened by the applicable local law in this case...." there was no clearly established law to the contrary.)

Accordingly, Sheriff Kimbrough is entitled to qualified immunity on plaintiff's First Amendment claim and therefore to summary judgment.

<u>**CONCLUSION**</u>

For the foregoing reasons, defendants' Motion for Summary Judgment [112] is **GRANTED** as to all defendants and defendants' Motion to Strike [117][15] is **DENIED as moot**. The Clerk shall close this action.

SO ORDERED, this <u>30th</u> day of <u>APRIL</u>, 2013.

<u>/s/ Julie E. Carnes</u>
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

---

[15] This motion to strike was also unopposed.

28